UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANA MEADOWS AND JEFFREY MEADOWS, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) NO. 3:18-cv-00746<br>) CHIEF JUDGE CRENSHAW |
| CALIBER HOME LOANS, | )<br>) |
| Defendant. | ) |

# MEMORANDUM OPINION

This action arises out of problems with a mortgage on a property in Springfield, Tennessee. Dana and Jeffrey Meadows bring claims against Caliber Home Loans ("Caliber") under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 et seq.; and Tennessee laws of foreclosure, fraud, and contract. Before the Court is Caliber's Motion to Dismiss pursuant to Federal Rule of Procedure 12(b)(6). (Doc. No. 6.) Plaintiffs have filed a Response in Opposition or, in the Alternative, Motion to Amend. (Doc. No. 26.) For the following reasons, the Motion will be granted in part.

I.  Factual Allegations

The Meadows are residents of Robertson County, Tennessee. (Doc. No. 1-2 at ¶ 1.) On August 5, 2013, they obtained a loan from Christensen Financial, Inc. ("Christensen Financial") in the amount of $298,493.00 to purchase real property located at 6538 Highway 431 North, Springfield, Tennessee 37172 (the "Property"). (Id. at ¶¶ 3-5.) They executed a promissory note in favor of Christensen Financial (the "Note") and secured it with a Deed of Trust (the "Deed of

Trust"). (Id. at ¶ 5.) Plaintiffs allege that "at some point after the purchase and financing," the ownership of the mortgage transferred to Caliber. Plaintiffs made payments to Caliber until they missed a payment in November 2014. (Id. at ¶ 6.)

Plaintiffs saw a statement on Caliber's website that read, "A temporary hardship doesn't have to be permanent. If you're behind on your loan payments, let Caliber help." (Id. at ¶ 8.) Facing financial difficulties, Plaintiffs called Caliber to "determine what programs were offered to assist them." (Id. at ¶ 9.) Plaintiffs allege that the Caliber representative, "instructed [them] to make their regular monthly payment in December 2014, and to include one-third of a regular payment each month for 3 months to cure the default." (Id. at ¶ 10.) Plaintiffs contend that they made payments under this "cure plan" as instructed in December 2014 and January 2015, but Caliber returned these payments "because they were insufficient to bring the account current." (Id. at ¶¶ 11-13.) The Complaint avers that, on January 29, 2015, Plaintiffs contacted Caliber to inquire about why the payments were being refused and were told that there was no "1/3 cure plan" in place. (Id. at ¶ 14.)

"Facing an uncertain future," Plaintiffs "entered into loan modification discussions with Caliber." (Id. at ¶ 15.) Plaintiffs allege that the loan modification process took eighteen months during which Plaintiffs fell twenty-one months behind. (Id. at ¶ 17.) At some point during the process, Caliber allegedly explained that "the modification could not be approved due to an outstanding tax lien on the subject property." (Id. at ¶ 18.) Plaintiffs claim that they were able to get the IRS to subordinate the tax lien.[1] Plaintiffs claim that "while the modification was under

---

[1] The Complaint does not allege that Caliber ever agreed this was an acceptable method of resolving this issue. Title records show that the IRS recorded a tax lien on the Property in 2015 for unpaid taxes in the amount of $18,394.14 for the tax years 2007, 2008, 2011, and 2013. (Doc. No. 6-5.) The IRS did not formally release the lien for these unpaid taxes until March 20, 2018. (Doc. No. 6-6.)

2

consideration and the parties were in discussions," Caliber began foreclosure on the Property despite federal rules and regulations against that type of "dual-tracking." (Id. at ¶ 19.) Plaintiffs allege that they attempted three more "trial" modifications, but Caliber continued to deny permanent loan modifications because of various reasons, including the "tax lien issue." (Id. at ¶¶ 20-22.) The last of these ended in March 2018 and Plaintiffs "have not received a permanent plan to date." (Id. at 22.)

On June 29, 2018, Plaintiffs filed this action in the Chancery Court for Robertson County. (Doc. No. 1.) Plaintiffs state that "all indications are" that Caliber will proceed to foreclosure. (Doc. No. 1-2 at ¶ 22.) Caliber removed the case to this Court claiming there is original federal jurisdiction over Plaintiffs' FDCPA claim (Doc. No. 1 at 2.) and soon thereafter filed the Motion to Dismiss.

II.     Legal Standard

To survive a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). "If the plaintiffs do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed." Lutz v. Chesapeake Appalachia, L.L.C., 717 F.3d 459, 464 (6th Cir. 2013) (citation and brackets omitted). Dismissal is likewise appropriate where the complaint, however factually detailed, fails to state a claim as a matter of law. Mitchell v. McNeil, 487 F.3d 374, 379 (6th Cir. 2007). In deciding a motion to dismiss, the court is not required to accept summary allegations,

legal conclusions, or unwarranted factual inferences. Mixon v. Ohio, 193 F.3d 389, 400 (6th Cir. 1999); Lillard v. Shelby Cty. Bd. of Educ., 76 F.3d 716, 726 (6th Cir. 1996).

III. Discussion

Caliber asks the Court to dismiss all of Plaintiffs' claims. By means of a five-page brief, Plaintiffs resist the motion as to all claims.[2]

A. FDCPA Claims

The Fair Debt Collection Practices Act ("FDCPA") was passed by Congress to protect consumers from "abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). The FDCPA applies only to debt collectors, not creditors. See Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 106 (6th Cir. 1996). Section 1692e of the FDCPA prohibits a debt collector from using false or misleading representations, or unfair practices, in connection with collection of a debt. 15 U.S.C. § 1692e. "To plead an FDCPA claim, a plaintiff must allege (1) that he or she is a "consumer" as defined by the Act; (2) that the "debt" arises out of transactions that are primarily for personal, family, or household purposes; (3) that the defendant is a "debt collector" as defined by the Act; and (4) that the defendant violated § 1692e's prohibitions." Smith v. Nationstar Mortg., --- F. App'x ---, 2019 WL 6131847, at *3 (6th Cir. Nov. 21, 2018) (citing Wallace v. Wash. Mut. Bank, F.A., 683 F.3d 323, 326 (6th Cir. 2012)). To violate § 1692e, a debt

---

[2] The Court may consider public records, exhibits attached to the pleadings, or documents attached to a motion to dismiss that are integral to a complaint, without converting a motion to dismiss into a motion for summary judgment. Rondigo LLC v. Twp. of Richmond, 641 F.3d 673, 680-81 (6th Cir. 2011); see also Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp., 413 F.3d 553, 560 (6th Cir. 2005) (noting that in deciding a motion to dismiss "the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice"). In undertaking this analysis, the Court has considered the exhibits to Caliber's Motion, which are publicly-recorded loan, deed, and tax lien documents kept in the regular course of business that are integral to Plaintiffs' claims. (See Doc. Nos. 6-1 to 6-6.) Plaintiffs have not challenged the authenticity of these documents. (See Doc. No. 26.)

collector's representation or action must be materially false or misleading (meaning it must tend to mislead or confuse the least sophisticated consumer), Wallace, 683 F.3d at 326-27, and its purpose must be to induce payment by the debtor, Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011). "[I]n assessing whether particular activity constitutes false, deceptive, or misleading conduct under [this section], we look to the 'least sophisticated consumer' standard." Galati v. Manley Deas Kochalski, LLC, 622 F. App'x 473, 476 (6th Cir. 2015) (quoting Lewis v. ABC Bus. Servs., Inc., 135 F.3d 389, 400 (6th Cir. 1998)). The question is whether a hypothetical least sophisticated consumer would have been misled by the defendant's actions. Wallace, 683 F.3d at 326.

FDCPA § 1692f is a broader catchall provision that forbids a debt collector from using "unfair or unconscionable means" to collect or attempt to collect any debt. 15 U.S.C. § 1692f. However, "if a [§] 1692f claim is premised on a false or misleading representation, the misrepresentation must be material." Clark v. Lender Processing Servs., 562 F. App'x 460, 467 (6th Cir. 2014) (citing Lembach v. Bierman, 528 F. App'x 297, 303-04 (4th Cir. 2013)). In sum, "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under either § 1692e or [§] 1692f." Id. (quoting Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010)). FDCPA claims are subject to a one-year statute of limitations. 15 U.S.C. § 1692k(d).

Plaintiffs' FDCPA claim must be dismissed for two reasons.

1. <u>Failure to Adequately Plead Violation of FDCPA</u>

Although Federal Rule of Civil Procedure 8 does not constitute a "hyper-technical, code-pleading regime," it "does not unlock the doors of discovery for Plaintiffs armed with nothing more than conclusions." Iqbal, 566 U.S. at 678-79. A complaint does not "suffice if it tenders

5

'naked assertions' devoid of 'further factual enhancement.'" Id. at 678 (quoting Twombly, 550 U.S. at 557). In other words, the pleading standards set forth by Twombly and Iqbal require Plaintiffs to provide some factual underpinnings for their claims that shows their factual basis and viability. Merely positing theories of legal liability that are unsupported by specific factual allegations does not state a claim for relief that survives a motion to dismiss.

Here, Plaintiffs do not sufficiently plead a violation of the provisions of §§ 1692e or 1692f. As discussed above, to state a claim under §§ 1692e or 1692f, Plaintiff must allege that Caliber made a "false, deceptive, or misleading representation" or used "unfair or unconscionable means," respectively, in attempting to collect Plaintiffs' mortgage debt. Plaintiffs simply recite in boilerplate fashion that Defendant made "false and/or misleading statements . . . regarding the state of the mortgage loan," and engaged in "irregular and deceptive actions" in servicing the mortgage loan. (Doc. No. 1-2 at ¶¶ 31-32.) The Complaint broadly alleges nothing more specific than that Caliber delayed or denied Plaintiffs a permanent loan modification. (See Doc. No. 1 at ¶¶ 1-22.) The Complaint further concedes that the delay or denial was based on an existing I.R.S. tax lien.[3]

Accordingly, the Complaint fails to specify what materially false or misleading or deceptive, or "irregular" actions (or potentially omissions) form the basis for any alleged violations of § 1692e and § 1692f. Indeed, the Complaint does not allege that Caliber *ever* promised Plaintiffs that it would agree to a permanent loan modification, or that Caliber *ever* engaged in any specific misrepresentation. Rather, Plaintiffs essentially allege that Caliber was difficult and made the

---

[3] The Complaint alleges that the I.R.S. (at some point in time) offered to subordinate its interest in the tax lien to Caliber, but it does not allege that Caliber was *required* to accept such subordination and thereupon grant a permanent modification. (Doc. No. 1-2 at ¶ 18.) According to the Complaint, Caliber "still stated that the modification could not proceed due to various reasons including the documents submitted and the lien." (Id.) Caliber subsequently attempted three trial modification plans with Plaintiffs. (Id. at ¶¶ 20-22.)

6

*wrong* decision regarding the permanent modification. Even regarding the original three-month "cure plan," the Complaint does not allege that Caliber acted unfairly or to deceive them; the Complaint simply alleges that Caliber reported that information concerning that cure plan was not in its system. In other words, with regards to the "cure plan," while the Complaint *might* generously be read to allege Caliber was negligent, it simply does not allege that Caliber was deliberately deceptive. (See Doc. No. 1-2 at ¶¶ 14-15.) Moreover, Plaintiffs "do not suggest that the least-sophisticated consumer would have been confused, let alone that [they were] confused" by Caliber's conduct. Galati, 622 F. App'x at 476. Regarding the "cure plan," Plaintiffs simply allege that Caliber – for whatever reason – had no record of it. (Doc. No. 1-2 at ¶ 14.) They do not allege any confusing behavior on Caliber's part or any confusion on their part. (Id.) The same is true for Caliber's behavior during the balance of the loan modification process – it may have been disappointing to Plaintiffs, but they do not allege how it was confusing. (Id. at ¶¶ 15-22.)

As a result, the Court is essentially left to guess what specific acts Caliber is alleged to have taken that constitute violations of the FDCPA and make its own judgment as to whether these unspecified acts are material. See Ogle v. U.S. Bank Nat'l Assoc. for Residential Asset Sec. Corp., Home Equity Mortg. Asset-backed Pass-Through Certificates, Series 2007-KS3, No. 1:17-CV-40-TAV-CHS, 2018 WL 1324137, at *7 (E.D. Tenn. Mar. 14, 2018) (where plaintiff made §§ 1692e and 1692f allegations in "threadbare recitals" lacking supporting allegations, concluding that "the Court – and, most importantly, defendants – are left to speculate as to the factual basis for [the] FDCPA claim"). This type of "unadorned, the-defendant-unlawfully-harmed-me" FDCPA accusation may not advance. Twombly, 550 U.S. at 555; see also Sexton v. Bank of N.Y. Mellon, Civil Action No. 5:15-329-DCR, 2016 WL 2354231, at *4 (E.D. Ky. May 4, 2016) (dismissing claim due to failure to allege facts "suggesting that [the defendant] violated" the FDCPA);

Goodman v. Nationstar Mortg., LLC, No. 3:13-1377, 2014 WL 1385861, at *4 (M.D. Tenn. Apr. 9, 2014) (dismissing claim due to failure to allege facts sufficient to show how Defendant allegedly violated section of FDCPA); Robinson v. Buffaloe & Assocs, PLC, No. 3:13-0146, 2013 WL 4017045 (M.D. Tenn. Aug. 6, 2013) (dismissing FDCPA claims because plaintiff did not specifically allege any activities prohibited by a section of the FDCPA); Love-Sawyer v. Equifax, Inc., No. 3:09-0647, 2009 WL 3169679 (M.D. Tenn. Sept. 28, 2009) (dismissing the "bare allegations" under Twombly as little more than a recitation of the elements of a FDCPA claim).

The Court notes that Plaintiffs' claim under § 1692f may fail to state a claim for another reason as well. Section 1692f is "intended to cover actionable debt collection practices that may not be expressly addressed" in the other sections of the FDCPA. See Williams v. Javitch, Block & Rathbone, LLP, 480 F. Supp. 2d 1016, 1023 (S.D. Ohio Mar. 22, 2007). In other words, generally speaking, a § 1692f claim fails where the plaintiff does not identify "conduct that would not be covered by a different FDCPA provision." Smith v. Greystone Alliance, LLC, No. 1:14CV722, 2015 WL 5232812, *1 (N.D. Ohio Sept. 8, 2015). Here, Plaintiffs have made no effort to differentiate the alleged deceptive conduct of Caliber that would be covered by § 1692f as opposed to § 1692e. In other words, Plaintiffs have provided no basis to conclude that any claim under § 1692f is not duplicative of a claim under § 1692e.

      2.    Failure to Adequately Plead that Caliber is a "Debt Collector" under the FDCPA

It is "well-settled" generally that "a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." MacDermid v. Discover Fin. Serv., 488 F.3d 721, 735 (6th Cir. 2007) (quoting Stafford v. Cross Country Bank, 262 F.Supp.2d 776, 794 (W.D. Ky. 2003)). The term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to

the extent such activity . . . concerns a debt which *was not in default at the time it was obtained by such person*." Dey El ex rel. Ellis v. First Tenn. Bank., No. 13-2449-JDT-dkv, 2013 WL 6092849, at *10 (W.D. Tenn. Nov. 18, 2013) (quoting 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added)). Indeed, in the words of the Court of Appeals, the term "debt collector" does not include "the consumer's creditors . . . or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Wadlington, 76 F.3d at 106 (citing Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)); see also King-Daniels v. Bank of America, N.A., No. 16-cv-11606, 2016 WL 5906000, at *3 (E.D. Mich. Oct. 11, 2016) ("Mortgage servicers are expressly exempt from the FDCPA unless a plaintiff alleges that a debt was in default when the servicer commenced servicing.").[4]

Here, Plaintiffs have not alleged facts demonstrating that Caliber qualifies as a "debt collector" within the meaning of the FDCPA. The Complaint alleges a sequence of events in which first, "the ownership of the mortgage transferred to Caliber," and, second, "Plaintiffs made payments to Caliber for several months until they missed a payment in November of 2014 due to financial difficulties." (Doc. No. 1-2 at ¶¶ 6-7.) The Complaint makes no mention of Plaintiffs

---

[4] "[O]ne cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 359 (6th Cir. 2012) (citing FTC v. Check Inv'rs, Inc., 502 F.3d 159, 173 (3d Cir. 2007); Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003)). "For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. Bridge, 681 F.3d at 359. The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. Id. (citing Wadlington, 76 F.3d at 106-08; see also Perry, 756 F.2d at 1208. This interpretation of the FDCPA is supported by Congress's intent in passing it. See, e.g., S. Rep. 95-382, 95th Cong. 1st Session 4, reprinted in 1977 U.S.C.C.A.N. 1695, 1698 (1977) ("[T]he committee does not intend the definition [of debt collector] to cover . . . mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing[.]").

9

ever being in default before November of 2014, and certainly no mention that Plaintiffs were in default when the mortgage was transferred to Caliber.[5] Rather, the Complaint only alleges that Plaintiffs were in good standing when Caliber assumed their mortgage and only encountered financial difficulties thereafter. (Id.) Accordingly, Caliber is not a "debt collector" for purposes of the FDCPA because the mortgage is not alleged to have been in default at the time it was transferred to Caliber.

For both reasons, the Court will dismiss Plaintiffs' FDCPA claims.[6]

---

[5] Aside from Plaintiffs' concession in the Complaint, the exhibits to Caliber's motion establish that it is the holder of Plaintiff's mortgage. (Doc. Nos. 6; 6-1 to 6-4.) However, to be clear, because the result would be the same if Caliber were only the loan servicer, additional discovery on this issue would be of no benefit to Plaintiffs. King-Daniels, 2016 WL 5906000, at *3.

[6] The Court notes that Plaintiffs face hurdles regarding the FDCPA statute of limitations. Any alleged violation of FDCPA §§ 1692e or 1692f occurring more than a year before Plaintiffs filed their complaint on June 29, 2018 – i.e., June 29, 2017 – is time-barred. The Complaint alleges that Plaintiffs became delinquent on their loan on November 2014 and entered a loan modification discussion with Caliber beginning in January 2015. (Doc. No. 1 at ¶¶ 7-16.) Plaintiffs further allege that "[t]he loan modification process took eighteen (18) months, causing the Plaintiffs to be twenty-one (21) months behind." (Id. at ¶ 17.) In other words, the Complaint alleges that the loan modification was denied in October 2016. Plaintiffs then allege that they began three additional three-month "trial" modification plans in a further attempt to reach a permanent modification, the last of which was completed in March 2018. (Id. at ¶¶ 20-22.) Accordingly, only a limited portion of Caliber's alleged actions fall within the one-year statute of limitations – specifically, its actions during the final "trial" modifications. However, the Court of Appeals for the Sixth Circuit has held that a bank does not necessarily violate the FDCPA anew merely by continuing to assert its interest in a mortgage. Jodway v. Orlans, PC, --- F. App'x ---, 2018 WL 6721097, at *4-5 (6th Cir. Dec. 20, 2018); Smith v. Lerner, Sampson & Rothfuss, L.P.A., 658 F. App'x 268, 273 (6th Cir. 2016). Caliber has a serious statute of limitation defense as to whether, if it began asserting its interest in 2014, it could violate the FDCPA anew within the statute of limitations by participating in the ongoing "trial" modifications in 2017 and 2018, particularly given that "[c]ourts have been extremely reluctant to extend the continuing-violation doctrine beyond the context of Title VII, . . . and [the Court of Appeals] ha[s] never applied the continuing-violation doctrine to an FDCPA claim." Slorp v. Lerner, Sampson & Rothfuss, 587 F. App'x 249, 257 (6th Cir. 2014) (internal citation and quotations omitted). However, the Court need not reach these questions given the outcome-determinative nature of the issues discussed above.

B.  State Law Claims

Plaintiffs' state law counts allege wrongful foreclosure, fraud, breach of contract, and violation of the TCPA. A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Ford v. Frame, 3 F. App'x 316, 318 (6th Cir. 2001) ("[D]istrict courts possess broad discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed."). "In determining whether to retain jurisdiction over [remaining] state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ., 484 U.S. at 350 n.7; see also Gamel, 625 F.3d at 952. ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claim[.]") (quoting Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996)).

The sole reason that this case is in federal court is that Caliber removed it from state court based upon subject matter jurisdiction arising from Plaintiffs' "federal claim for violation of the FDCPA." (Doc. No. 1 at 2.) Caliber noted that the Court had original jurisdiction over that claim under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367. (Id.) As discussed above, the Court will dismiss the FDCPA claim. It is well in advance of trial. Plaintiffs' remaining claims (i.e., TCPA, fraud, wrongful foreclosure, breach of contract) are those that Tennessee courts routinely and skillfully consider. Furthermore, they arise

11

in the context of the alleged negative treatment of Tennessee residents by the holder of a mortgage and deed to a Tennessee property; the State therefore has an interest in resolving such claims in the first instance. After weighing the relevant factors, the Court does not find substantial justification to depart from general rule of declining to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

    C.    <u>Plaintiffs' "Motion to Amend"</u>

As an alternative to their opposition to the motion to dismiss, Plaintiffs seek to avoid dismissal by requesting leave "to amend their Complaint either in its entirety or with specific reference to individual claims rather than dismissal of those claims." They offer no greater detail. Plaintiffs have delayed their response to the motion to dismiss six times over six months, and during that time they have not filed a motion to amend the Complaint. (<u>See</u> Doc. No. 27.) After having that long period of time to consider their claims, Plaintiffs filed a five-page substantive response to the motion to dismiss and included what the Court of Appeals recently – and disapprovingly – described as a "throwaway" request for leave to amend. <u>See</u> <u>Smith</u>, 2018 WL 6131847, at *3.

"Although Federal Rule of Civil Procedure 15 instructs courts to 'freely give leave' to amend, that liberal policy does not apply to the [P]laintiffs' one-sentence request." <u>Kuyat v. BioMimetic Therapeutics, Inc.</u>, 747 F.3d 435, 444 (6th Cir. 2014). The Court of Appeals has unequivocally held that a "request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . *not* a motion to amend." <u>La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP</u>, 622 F.3d 471, 486 (6th Cir. 2010) (internal quotation marks omitted) (emphasis added). It is also obviously in violation of Middle District of Tennessee Local Rules 7.01(a)(1) and 7.01(a)(2). Without a memorandum of law or proposed

amended complaint, and with only one essentially meaningless sentence, Plaintiffs' request is, as the Court of Appeals would describe it, "brief, perfunctory, and patently inadequate." Smith, 2018 WL 6131847, at *3. In the Appeals Court's words:

> [Plaintiffs] never identif[y] the factors courts consider when deciding whether to grant leave to amend (undue delay in filing; lack of notice to the opposing party; bad faith by the moving party; failure to cure deficiencies by previous amendments; undue prejudice to the opposing party; and futility of amendment). And [they] never explain[] why those factors favored granting [them] leave. Indeed, because [they] never attached a copy of a proposed amended complaint to a formal motion for leave to amend, [they haven't] even given us enough information to consider the factors relevant to [their] request. For example, without knowing what the amended complaint would say, it is impossible to determine whether amendment would be futile.

Id. Accordingly, the request to amend will be denied. See, e.g., Kuyat, 747 F.3d at 444 (affirming, where plaintiff failed to attach copy of a proposed amended complaint, denial of request to amend in final sentence of opposition memorandum that read, "Alternatively, Plaintiffs request leave to amend the Complaint in the event that the Court finds that it falls short of the applicable pleading standards in any respect").

IV. Conclusion

For the foregoing reasons, Caliber's Motion to Dismiss (Doc. No. 6) will be granted in part. Plaintiffs' FDCPA claims will be dismissed with prejudice. The Court will decline to exercise jurisdiction over Plaintiffs' remaining state law claims, and this case will be remanded to state court.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE